Appellant Linda Rexwinkel This is a First Amendment case and an FMLA case that's coming to this court on a motion to dismiss. So this court is looking at the record, the complaint essentially, de novo, in order to determine whether construing those allegations in a light most favorable to Ms. Rexwinkel, there is a case under either the First Amendment, 1983, or under the FMLA. We submit that the district court too strictly read the complaint at the pleading stage. These issues are typically issues that come up after there's been discovery and after when the motion for summary judgment was made. Did the court, where is the alleged link between your client's leave and the disciplinary actions, and specifically where is the allegation in your complaint, because I believe that that was one of the issues. That's one of the issues that we suggested clarification through a motion to amend in conjunction with the opposition that we filed to the motion. And I think, as I argue in the brief and here, the linkage isn't apparent. In other words, the allegations are more focused in terms of stating a First Amendment claim and then the FMLA claim is made secondary to that. But if you construe the complaint as a whole, the fair intendent of it is that those adverse Getting more time than I deserve. Yes. Okay. Getting, the fair intent is that the adverse actions are alleged to be caused by or motivated by both the FMLA leave that she took and by the First Amendment activity that she engaged in. Now, I guess one of the, I have a question about, if I'm understanding your argument, it appears that your client seeks to amend her complaint to name her supervisors in their official capacities. And I'm wondering, was that presented in the district court? And if so, where? I wouldn't be arguing it here if it wasn't. I think it will show that he was denied leave to amend and you are complaining about it. I am complaining about that. But did you specifically ask to amend to include the supervisors in their official capacities? Or what were you asking to amend? Well, the purpose of that, I'm looking at the excerpts of record 29 and 30. It does not appear that I made that particular argument that the issue is injunctive relief. And that's where this is coming up. You know, in order to, if we get to the end of the case and we prevail under the Section 1983 claim, injunctive relief is one relief that can't, and we have to have somebody we can point to and join them to do something. Okay. Your First Amendment claim is that your client was retaliated against for exercising the First Amendment rights. And what were the statements that she made in exercise of her First Amendment rights and what was the link between them and some kind of discriminatory action? Again, we're talking allegations? Yeah. Yeah. What's another case? The one is that – What was her exercise of rights? The two specific things. One is that a false statement was made in a performance evaluation alleging that she had missed target dates when everybody knew that she had not missed a target date. And she complained in the sense that that's a false statement in a public record that is in her personnel file, and that false statements by management, managerial employees, in a state document is a public concern. Complained to whom? She complained to the supervisor, the supervisor that rated her, and that person's supervisor, the manager. That's number one. Number two is – How is that a matter of legitimate public interest? Well, that's a close question here, Your Honor. It is. I mean, you've got – it's in a personnel document, so we've got the concern raised by the Connick and the Pickering cases that mere personnel-related issues that are personal to the plaintiff don't rise to the level of public concern. What we're arguing here is that, using the case law that says that if part of the speech is a public concern, then it can be protected. We're not saying that her grief about the rest of the evaluation and her grief about being downgraded to her personally is a speech on a matter of public concern. But what's the other thing? One is complaining about her personnel record. The other is about a secret file that she actually reported having been on a server maintained by her supervisors that was visible to all. Reported to whom? I believe she reported it – Did you say whom? No, internally, up the chain of command. There may have been a report to the Office of Professional Responsibility. I can't remember that right now. But in any event, things like that are factual issues to be developed down the road. In terms of determining whether or not we've pled public concern, though, we have alleged that the statements were of public concern. We've explained the secret file in as much detail as needed for a pleading in order to say, this secret file that Nevada state law prohibits supervisors from having secret files on employees, this is a secret file maintained on a server that everybody in the department had access to. And it wasn't just about the plaintiff. It had personnel matters on there related to other people in the department as well. And memos. Is there anything in the record that weakens that argument in your view? That weakens it? What happened after she made the complaint? We allege that in close temporal proximity to that, she suffered the adverse actions. No, I mean what happened regarding the secret file. I can tell you it's not alleged in the complaint, which is what's before this court. No, we're just looking at the records of divorce. But as I read, as I prepared for this argument, I think that something was done with that file. And I think that is a part of the record. But maybe I read something that isn't. Well, my recollection is it was taken off and corrected. I think that's what happened. Well, it was deleted and otherwise handled. I've got that in quotes somewhere, but I'm trying to see where that came from. If it's from the complaint. She made the complaint. She did find the file. The company took immediate action. And that's what I was asking about. And I thought I read it. Well, that's a factual argument. I don't know if it refutes the fact. No, I mean does anybody refute it? You said this factual argument. No, I concede that it was removed, that it was corrected. But that doesn't detract from the fact that it was speech on a matter of public concern. I just don't understand this, the First Amendment claim. Your position legally, I guess, if I understand, is that any time you make internal complaints about the conduct of the workplace and something happens to you, for example, you're making internal complaints about what is being happened that you think is unjustified and the employer doesn't think is unjustified, and you perhaps are passed over for a raise or something like that, that that is a First Amendment violation. I don't understand that. I wouldn't go there, Your Honor. Well, but that seems to be where you're going. Well, it sounds like the court is worried about a floodgate analysis. No, I'm just worried about the argument that anything that is complained about in a public agency is a matter of public concern. That seems to be your premise. I don't think it is. I think you need to look at whether or not a citizen from the outside looking in, regardless of the Ninth Circuit case law doesn't distinguish between internal and external reporting as part of the public concern test, whether it's inside or outside goes. I understand that. Yeah. But she's not reporting about fraud or corruption or something like that. It's just the way she was being treated. No, she's complaining about violation of law, both with respect to falsification of records and maintaining a secret file. Okay, but this is 12 v. 6, so we've got to go by the complaint. All right, and let's assume that on the one where the secret file, you make the allegation of that, but it would seem to me that you also, in your complaint, would have to allege a causal link between that and something else, and that wasn't in your complaint. But you're saying that you could allege that in a complaint if given the opportunity to amend, and isn't that how the evidence came in that you wouldn't be able to because it was deleted immediately? If you want to look at that point in terms of causal relationship, that's the third element. Where in your complaint do you allege a causal link? As I stand here, I can't point you to it, but I really meant to say it. What is it? Temporal proximity between the public speech on a matter of public concern and the ensuing litany, I submit litany, of adverse actions that she went through, and those things weren't happening before she spoke out. And that's classic under Cole Salter v. City of Salem is one case that talks about the temporal proximity. Well, see, I don't think your complaint is sufficient, but the more problematic thing for me is, you know, we have to liberally look at giving a person an opportunity to allege, and the district court also found that you weren't able to make that showing, that you would be able to amend it, that any amendment would be futile. And so do you have anything else that you haven't mentioned that you could add to it to make it sufficient? I could allege that there was a causal relationship, and that would satisfy that element. Whether or not the correction in response to her report cuts the causal chain is a factual issue. Okay, let me ask you this. About the family medical leave act, is that part of your confession? Yes, it's in there. Are you seriously advancing that? She did take leave. She took leave very seriously. She had a horrible situation with her son being tragically injured. And the same things that happened to her as she is claiming in her complaint were as a result of her taking leave? Alternative theories. Yeah, okay. What is the connection there? Same connection, temporal proximity, relationship, sequential relationship. Thank you. You should know. Your Honor, whether there's direct evidence, whether it has discovery. May it please the Court. My name is Mike Psalms. I'm with the Nevada Attorney General's Office, and I'm here on behalf of the appellees of the Nevada Department of Motor Vehicles and Mr. Parsons and Ms. Nieto-Marcusen. This case, as we've heard, is primarily about two claims, a First Amendment retaliation claim and an FMLA retaliation claim. The First Amendment retaliation claim was dismissed because Ms. Rexwinkle did not engage in protected speech. Rather, she engaged in speech of a personal nature. Now, as this Court knows, to be successful on her claim, Ms. Rexwinkle must have engaged in speech on a matter of public concern. And she only identifies two instances of speech. She's only relying on two instances of speech. One, she alleges that she protested a falsehood on a state document. It's clear from the allegations that we're talking about her employment evaluation. She also alleges that she notified management of a computer file that contained information about employees and herself, and in particular, contained information critical of Ms. Rexwinkle. You take the case law and apply it to those instances of speech, in particular the Conakry-Meyer Supreme Court decision, and the conclusion that's reached is that this is not the type of speech that's meant to be constitutionalized. The Supreme Court stated in Conakry, to be protected, speech must relate to a matter of political, social, or other concerns of the community. And that's not the type of speech we're dealing with here. Now, Ms. Rexwinkle, through her attorney, alleges or uses, frames her speech in a way that uses unsupported conclusory allegations when she says that she's protesting a falsehood or that she's notifying management of a secret file. These aren't supported and they're not based in reality. Okay, but it's a 12b-6, so everything that she says, we have to take it as true in the complaint, right? Fair enough. Okay, so what does she have there? Well, even going further, if you accept that it's true, and you look at the content of the speech, both of them are not an issue of public concern. With one, we're talking about an employment evaluation that's prepared by a supervisor, and it's based on the supervisor's observations. Well, I think the employment one is easier than the second one. I think that one's easier, and so if you don't, as a matter of law, if you can't establish that, if that gets past the first, then it would seem to me that the complaint also has to show a causal link. And what he's saying is all that he could show was the temporal and the court. Is that why the court said it would be futile to amend because that temporal is not enough, or what did the court say? Well, the appellees agree that there's no causal connection or allegations within the complaint, but the court, when it heard the request to amend in a conclusory way at the end of the opposition to the motion to dismiss, there was no explanation provided by Ms. Rexwinkle through her attorney as to how she proposed to amend the complaint or how amending the complaint might cure any of the deficiencies identified within the motion to dismiss. Let me ask you about the family medical review then. What was the basis for the dismissal of that claim? With that claim, the court noticed that Ms. Rexwinkle, again through her attorney, failed to submit any argument in opposition to a dismissal of that claim. Therefore, the court dismissed the claim. But what was the insufficiency? Well, beyond the fact that there was no argument provided. But we're talking about the allegations, aren't we? Correct. I just want to point out that there was no argument in opposition at the district court level. Okay, but the complaint still has to be looked at. Sure. And I think that the court noticed as well that the allegations sufficient to support adverse employment actions were not present within the complaint to support the FMLA claim. There was no termination of the employee. There was no loss of promotion. There was no loss of anything significant alleged within the complaint. Going back just briefly to the First Amendment claim, because I think it's important that the only way Ms. Rexwinkle is successful on that claim is if she engaged in protected speech. You don't go any further if she did not engage in protected speech. And with both of her instances of speech, you look at the content, the form, and the context, and it clearly shows that this is not protected speech. If you look at the context that the speech is made in, Ms. Rexwinkle, as alleged in her complaint, returned from family medical leave, and she has perceived that the workplace has changed, that people are treating her differently, and that there are these ongoing disputes between her and between her management and her supervisors. So these instances of speech are merely extensions of these ongoing disputes in the workplace. If you take a lot of it, it's alleged that she took a lot of medical leave. Sure. Isn't she also alleging that when she came back after the medical leave, she was treated differently than other employees? She does allege various things that she was treated differently. Now, if she wasn't given as much flex time? I believe that's one. And your position and the district court's position with respect to that was that she had what? That that's not a violation of the act? Or what? Well, again, we're talking about an FMLA retaliation claim, and the allegations of the complaint are that these actions were taken in retaliation. Well, if you come back after taking a lot of medical leave that you're entitled to under the act, and all of a sudden you're told you can't have any more flex time, you can't have any more of the things that you were giving to other employees on the job, why isn't that an interference with your exercise of those rights of retaliation? Well, the primary authority that we're relying on is found within the Code of Federal Regulations, which indicates that you can't use the taking of leave as a negative factor in employment actions such as hiring or promotions or disciplinary action, and none of those things are alleged within the complaint. So it's okay if you tell somebody we're going to take away all your flex time so that you have to work from 9 to 5? Well, again, we're looking at what's primarily identified within the Code of Federal Regulations. Is that okay? It could. I will agree that there might be. Is that not a violation of the act? I don't think it's a violation of the act. Well, it would have to be as a matter of law not a violation of the act for you to prevail on a 12B6 motion, correct? Correct. But, again, Ms. Rexwinkel never made any of these arguments at the district court level. She's trying to raise now or make some arguments now on appeal what she really should have done at the district court level. Well, if we review it de novo, then don't we just look at the complaint and say there's either you make it or you don't based on that, right? Correct. But she has really no damage as a violation of the Rexwinkel Leave Act. I agree. As far as I can see, it's alleged in the complaint she doesn't have to. Yeah. In conclusion, I just ask that this court recognize that the district court made a proper decision and properly dismiss the complaint of Ms. Rexwinkel. Any other questions I'm happy to answer? I don't believe there are any. Could I just ask you one question? What damages do you want for the meth leave-out funds? Because apparently you didn't argue there and you indicated it's in there, but you didn't argue very vigorously that you'd try to keep it in there for long. Well, that might be why. Active damages are what I'm talking about. Most likely those are an economic type of measure. And the first amendment gets me to the emotional distress type of damages. Okay. On that, I submit, Your Honor, unless you have other questions. Thank you. It's been a pleasure. Thank you. Thank you. The case gets started and is submitted for decision.
judges: Schroeder, Farris, Callahan